In the Matter of PENN CENTRAL TRANSPORTATION COMPANY, Debtor.

Appeal of Richard Joyce SMITH, Trustee of the Property of the New York, New Haven and Hartford Railroad Company, No. 74–1362.

Appeal of BANK OF NEW YORK et al., No. 74–1447.

Nos. 74–1362 and 74–1447.

United States Court of Appeals, Third Circuit.

Argued Nov. 18, 1974.

Decided Jan. 22, 1975.

Joseph Auerbach, Morris Raker, Charles W. Morse, Jr., Laura Steinberg, Boston, Mass., for appellant, Richard Joyce Smith, Trustee; James Wm. Moore, New Haven, Conn., Gratz, Tate, Spiegel, Ervin & Ruthrauff, Philadelphia, Pa., Sullivan & Worcester, Boston, Mass., of counsel.

Edward Roberts, III, James R. Hilton, Indenture Trustees, New York City, Liaison Counsel for appellant; Proskauer, Rose, Goetz & Mendelsohn, White & Case, New York City, Morgan, Lewis & Bockius, Philadelphia, Pa., Kelley, Drye, Warren, Clark, Carr & Ellis, New York City, of counsel.

Carla A. Hills, Asst. Atty. Gen., Robert E. J. Curran, U. S. Atty., Morton Hollander, David J. Anderson, James F. Dausch, Sp. Lit. Unit, Civ. Div., Attys., Dept. of Justice, Washington, D. C., for the United States of America, appellee.

James E. Howard, Philadelphia, Pa., for appellees, The Trustees of the Property of Penn Central Trans. Co., Debtor.

Before ADAMS, GIBBONS and WEIS, Circuit Judges.

## OPINION OF THE COURT

GIBBONS, Circuit Judge.

These appeals, taken pursuant to the Bankruptcy Act, 11 U.S.C. § 47, seek review of Orders No. 1480 and No. 1509 entered in the Penn Central reorganization proceedings. Order No. 1480 authorizes the trustees in reorganization to enter into an agreement with the Secretary of Transportation with respect to certain equipment obligations, and Order No. 1509 declines to modify Order No. 1480 in certain requested particulars. The appellant in No. 74–1362 is Richard Joyce Smith, trustee of the property of the New York, New Haven and Hartford Railroad Company, and he asserts standing in his three-fold status as secured creditor, unsecured creditor, and stockholder of Penn Central. The appellants in No. 74–1447 are the Indenture Trustees of certain mortgage bond issues on which Penn Central is the obligor. The district court opinion approving Order No. 1480 is reported together with its denial for reconsideration in Order No. 1509. In re Penn Central Transportation Co., 373 F.Supp. 185 (E.D.Pa.1974).

Order No. 1480 arose out of what has become the familiar annual first quarter cash crisis of the Penn Central reorganization. In February, 1974 general revenues were believed by the trustees to be insufficient to meet equipment obligation installments totaling $10.8 million due to mature on February 15 and

March 1, 1974 on conditional sale contracts. Nonpayment might have brought default clauses into operation, and under § 77(j) of the Bankruptcy Act, 11 U.S.C. § 205(j), equipment vendors could have repossessed. The equipment obligations covered some 100 locomotives and 10,000 freight cars with an original cost of $186 million of which Penn Central had already paid $70 million. Repossession obviously would have been catastrophic not only to Penn Central's continued operation, but also to reorganization of a northeastern rail system under the Regional Rail Reorganization Act of 1973, 45 U.S.C. § 701 et seq.

On February 12, 1974 the Penn Central trustees applied to the Secretary of Transportation for assistance pursuant to § 213 of the Rail Reorganization Act.[1] This section authorizes the Secretary to expend up to $85 million for the purpose of enabling railroads in reorganization to continue to provide essential rail services pending completion of reorganization contemplated by the Act. However in February, 1974 it was not clear that Penn Central or any other railroad in bankruptcy would be reorganized under the Regional Rail Reorganization Act of 1973. The Secretary took the position that it would be imprudent in these circumstances to make outright grants for the payment of equipment obligations since in the event of liquidation of Penn Central the grants would have inured to the benefit of Penn Central mortgage bond holders by virtue of after-acquired property clauses in the mortgages, rather than to the benefit of the public. The Department of Transportation proposed, instead, that it would pay the install-

ments directly to the equipment obligees and become subrogated to their contract and statutory rights in the equipment. It also proposed that its subrogee position be subordinated to the interests of the equipment obligees with respect to future installments, interest or maturities. Finally, it proposed that so long as the trustees remained in possession of the equipment, and did not default on future equipment obligations, they would not be obliged to repay the debt owed to the United States. The trustees could however, repay this debt to the government at any time without interest.[2]

The appellants objected to the Secretary's proposal, (1) because advances to the equipment obligees were essentially loans rather than grants, and hence not authorized by § 213 of the Act, and (2) because by relieving the trustees of the need to make immediate payment, the government was freeing the trustees to use cash in the deficit operation of the railroad and thereby to continue the erosion of the estate. See In re Penn Central Transportation Co., 494 F.2d 270, 283 n. 13 (3d Cir. 1974) (Columbus Option), cert. denied, 419 U.S. 883, 95 S.Ct. 147, 42 L.Ed.2d 122, 43 U.S.L.W. 3190 (U.S. Oct. 15, 1974).

Appellants' standing to object to the proposed arrangement is entirely dependent upon their status as creditors and stockholders allegedly being subjected to an uncompensated taking by virtue of such erosion. The district court, recognizing such standing, did not decide the merits of the erosion contention, but concluded that it would approve the pro-

---

1. Section 213 of the Act, 45 U.S.C. § 723 provides for emergency assistance pending implementation of a final system plan.

"(a) *Emergency Assistance.*—The Secretary is authorized, pending the implementation of the final system plan, to pay to the trustees of railroads in reorganization such sums as are necessary for the continued provision of essential transportation services by such railroads. Such payments shall be made by the Secretary upon such reasonable terms and conditions as the Secretary establishes, except that recipients

must agree to maintain and provide service at a level no less than that in effect on the date of enactment of this Act.

(b) *Authorization for Appropriations.* —There are authorized to be appropriated to the Secretary for carrying out this section such sums as are necessary not to exceed $85,000,000, to remain available until expended."

2. Other details of the Secretary's proposal, not relevant here, are described in the district court's opinion. 373 F.Supp. at 188–190.

posed arrangement without prejudice to the assertion of the erosion contention at a later time. The court concluded:

"This transaction will be approved. There is no alternative." 373 F.Supp. at 187.

Order No. 1480 authorizing the trustees to accept the Secretary's proposal was entered on March 1, 1974, and reconsideration was denied in Order No. 1509 on March 19, 1974. These appeals followed. Because of subsequent events of which we must take notice we conclude that they must be dismissed.

The first step in the scheme of the Regional Rail Reorganization Act of 1973 is the so-called 120-day decision under § 207(b) that a "railroad is reorganizable on an income basis within a reasonable time under section 77 . . . and that the public interest would be better served by such reorganization than by a reorganization under this [Rail] Act." On May 2, 1974 the district court concluded that Penn Central could not be reorganized on an income basis within a reasonable time under § 77. The next step is the so-called 180-day decision under § 207(b) which requires that reorganization proceed pursuant to the Rail Act unless the district court "finds that [the Rail] Act does not provide a process which would be fair and equitable to the estate of the railroad in reorganization . . . ." The district court concluded, on July 1, 1974 that reorganization of Penn Central would not be permitted under the Regional Rail Reorganization Act because that Act made no provision for protection of the estate from interim erosion caused by its required deficit operation pending implementation of a final system plan under the Act. In re Penn Central Transportation Co., 382 F.Supp. 856 (E.D.Pa.1974). That decision was appealed to the Special Court created by § 209(b) of the Rail Reorganization Act. On September 30, 1974 the Special Court reversed, holding that the Tucker Act, 28 U.S.C. § 1491 provided a remedy for any unconstitutional taking which resulted from interim erosion during the operation of Penn Central required by § 304(f) of the Act. In re Penn Central Transportation Co., 384 F.Supp. 895 (Spec.Ct. 1974).

Meanwhile, on June 25, 1974 in Connecticut General Insurance Corp. v. United States Railway Ass'n, 383 F.Supp. 510 (E.D.Pa.1974) a three-judge district court held that the Rail Reorganization Act of 1973 was unconstitutional for several reasons, including the absence of a provision for compensation for the taking resulting from interim erosion. The *Connecticut General* case was appealed to the Supreme Court pursuant to 28 U.S.C. § 1252. On December 16, 1974 the Supreme Court in the Regional Rail Reorganization Act Cases, 419 U.S. 102, 95 S.Ct. 335, 42 L.Ed.2d 320, 43 U.S.L.W. 4031 (1974) held that the statute was constitutional because, as the Special Court had held, the Tucker Act remedy was not barred by the Rail Act and is available to provide just compensation for any "erosion taking" mandated by the Act's provisions. At 122–136, 95 S.Ct. 335, 43 U.S.L.W. at 4037–41.

Thus it is now clear (1) that Penn Central is a railroad in reorganization under the Regional Rail Reorganization Act of 1973 rather than under § 77 of the Bankruptcy Act, and (2) that to facilitate reorganization, interim operations of the railroad at a loss may constitutionally be continued because the United States will be required to indemnify the creditors and stockholders for interim erosion of the debtor's estate in an action in the Court of Claims. Since the only standing of the appellants to challenge Order No. 1480 arose out of their claim that it resulted in uncompensated erosion of the estate, we conclude that they no longer have such interest in the subject matter of Order No. 1480 as permits them to appeal pursuant to 11 U.S.C. § 47. If, as appellants contend, the Secretary exceeded his authority under § 213, they have no standing to object since they were not injured by such excess except to the extent that it might have resulted in interim erosion. The district court did not decide whether Or-

der No. 1480 resulted in such erosion, and it is now clear that the Court of Claims will be the appropriate forum for such adjudication.

The appeal will be dismissed.[3]

---

3. We have no occasion on this appeal to consider what residuum of appellate jurisdiction is left in this court rather than in the Special Court with respect to other types of orders which may be entered in the Penn Central proceedings in the District Court for the Eastern District of Pennsylvania. See §§ 209(b), 601(b), 45 U.S.C. §§ 719(b), 791(b).